United States District Court
Central District of Illinois

Don Campbell
Plaintiff

Vs.

Unknown Named Sheriff Kankakee County Jail, sued in his individual and official capacities, and ~~four~~ unknown named Deputy Sheriffs and one unknown named Nurse sued in they're individual capacities

Defendants

FILED
Complaint 9:07

Title 42 U.S.C. § 1983
Civil Rights Action

Jury Trial Demand

Case No: 05-20-DRH

---

Title 42 U.S.C. § 1983 Civil Rights Act - Complaint

**Preliminary Statement:**

Plaintiff captioned above appears pro. se., this is a sec. 1983 lawsuit that challenges the constitutionality of the treatment afforded the plaintiff by the above named and unknown named defendants, whereas the defendants in a intentional and deliberate act failed to protect the plaintiff, compensatory and punitive damages are sought by the plaintiff. Plaintiff was also denied medical treatment.

**Jurisdictional Statement:**

The Court has jurisdiction over the plaintiff's claims of violations federal constitutional rights under 42 U.S.C.A. § 1331 and 1343 supplemental jurisdiction is evoked by the plaintiff where

Applicable under 28 USC 2 1367.

Exhaustion of Administrative Remedy.

Plaintiff filed a Inmate Grievance with the Sheriff at the Kankakee County Jail twice, and filed a second step Grievance with Jail and Detention Standards Springfield, Illinois.

Notice of Claim:

Where applicable to a 21983 pleading a Notice of Claim under state statute is not a prerequisite See: Blas V. Endicott 31 F.Supp.2d 1131 (E.D. Wis. 1999), But Campbell filed one as a courtesy.

Parties:

1. The plaintiff Don Campbell (hereinafter) Campbell was incarcerated at the Kankakee County Jail, Kankakee, Illinois during the events described in this Complaint.

2. The Defendants unknown named (Sheriff), unknown named Nurse, and four unknown named officers are deputy sheriff's officers employed at the Kankakee County Jail 450 E. Court Street Kankakee, Illinois. 60901 They are sued in their Individual capacity's

3. Defendant Sheriff, is a Sheriff employed at the Kankakee County Jail, whose name is presently unknown to plaintiff Campbell,

He is sued in his official and individual capacitie.

4. Defendant, first unknown named Deputy Sheriff is the Kankakee County Jail 1st shift, sergent in charge of the administrative running of the Jail on the 1st shift. He is sued in his individual capacity.

5. Defendant, second unknown named Deputy Sheriff is the Kankakee County Jail 2nd shift sergent in charge of the administrative running of the Jail on the 2nd shift. He is sued in his individual capacity.

6. Defendant, Third unknown named Deputy Sheriff is a employee at the Kankakee County Jail in charge of working the unit Campbell was housed on, on the day in question, He is sued in his individual capacitie.

7. Defendant, fourth unknown named Deputy Sheriff is a employee at the Kankakee County Jail in charge of working, running or assisting in the running of the unit Campbell was housed on, on the day in question, He is sued in his individual capacitie.

8. Defendant, fifth unknown named Nurse is a employee at the Kankakee County Jail in charge of treating Detainee's for medical emergency's, she is sued in her individual capacitie.

9. All the Defendant's have acted, and continue to act, under color of state law at all times relevent to this complaint.

## Statement of Facts

10. That on or about December 22, 2002 Campbell was arrested in the City of Manteno, Illinois and charged with theft from a person, taken to the Kankakee County Jail and subsequently given a $30,000 Bond.

Campbell was housed in a maximum security block, where inmates were charged with tripple murders, double murders, murder and attempted murder.
The houseing area Campbell was placed in consisted of some 20 inmates, the unit is seperated so that only ten inmates are suppose to be free at any one time. In the Day Room Area, to watch television.

11. That because the Defendant's knew that Campbell was from Chicago from his Identification and Booking address given, Defendant's Deliberately housed Campbell in the unit in question maximum security with murderer's Ect, targeting Campbell as one to be disliked and, viewed as a possible problem simply because of being from Chicago.

12. That Defendant's knew or should have known that nearly all Detainee's from Chicago that was housed in the block of unit that they put Campbell were Assaulted and Beaten Serverely.

13. That Defendant's knew or should have known that many

of the Detainee's actually from Kankakee and the surrounding area, were assaulted by other Detainee's when housed on the unit Campbell was housed on.

And Defendant's knew of the substantial risk of inmate on inmate assault to Campbell by placing him on this unit yet were Deliberately Indifference to this risk of harm to Campbell, and placed him on this unit.

14. That while on the Maximum unit in question on or about the 3rd floor, Campbell after several Days began requesting to be housed in a different less violent unit, because the inmate Detainee's showed a strong animosity and Dislike for Campbell because Campbell was from Chicago. And in December, 2002 Campbell wrote several inmate Detainee request slips to the sheriff Defendant warning of danger to his person and Requesting to Move.

Campbell also in December, 2002 wrote several seperate Detainee Request slips to Defendant's one and two Requesting to be Moved Because he feared for his personal safety. And all Defendants, Refused to act and were Deliberately Indifference to the danger Campbell was in, and as a Result failed to protect him.

15. That on or about December 29, 2002, in the early hours of approximately 9:00 AM several inmates on Campbell's unit began squeezing water out of bottles on

Campbell, and throwing water out of cups through the bars on Campbell while Campbell was locked in his cell on the unit. Subsequently the Devious Detainee's began threatening Campbell, when Campbell requested that the water attacks stop.

Campbell reported this to the Defendant, unknown named Third Defendant Black male, and requested to be moved to another unit, said Defendant took Campbell and housed Campbell in the Holding cell directly outside of the unit used as a Law Library with one book in it (the Illinois Criminal Law and procedure book).

Campbell was left inside of this Holding cell all day during which time Campbell spoke to several Deputy Sheriffs indicating that he felt he would be assaulted and out numbered if he was not moved from the unit he was on. Campbell spoke too several white male Sheriff Deputy's and one white and one Black lady Deputy Sheriff's they listened to Campbell but took NO action.

And at the near end of the first shift, Third Defendant came and removed Campbell from the Holding cell, told Campbell that he had notified the First defendant sergent and the shift commander of the problem and they told him to put Campbell back on the unit, and Campbell was forcefully ordered back on the unit, Campbell heard several Detainee's warn Third Defendant not to

Put him back on the unit.
These threats were ignored Campbell was placed back on the unit and locked in his cell.

16. That on or about December 27, 2002 2nd shift approximately 4:00 pm the unknown named fourth defendant white male opened all detainees doors on the unit, Campbell stoped and reported to him, the belief that he was in danger and wanted to be moved, said defendant stated he would report this to the shift commander, Campbell indicated that he wanted to be locked in his cell, the Defendant stated you are locked in you cell on the walk, you have a room mate, the guys on the other side can't get to you. The Defendant left.

And some 20 minutes later the inmates locked on the side with Campbell just began punching beating kicking and stomping Campbell about the head face and body causing serious injury to Campbell.

At this time the Detainees on the other side during the attack, began shaking the bars door that separated them until it came off track and came open and they pulled Campbell to the day room and joined into the attack.
And at least 8 to 12 Detainee's all beat Campbell until his eyes were swollen and black his nose and mouth was bloody and his head and body had serious

Bruise's and Knot's

After some 5 or approximately 15 minute's Deputy Sheriff's ran on the unit on the out side of the bar's where the Detainee's are housed, whether as a result of hearing Campbell yell for help or because they observed the beating on Camera, But when Jailers Defendant's arrived the Detainee's stoped beating Campbell and dispursed.

Campbell was removed from the unit, questioned by defendant Second Sergent. The Defendant fifth unknown named Nurse. Refused to document Campbell's serious injury's, Denied Campbell any meaningful medical treatment, and did not refer Campbell to a Medical Doctor.

17.) That Campbell was then placed in the ground floor Detainee holding cell, with new Detainee's waiting to be booked into the jail, and Campbell was left in this holding cell to live for approximately two week's under in humane and cruel condition's.

And Campbell remained under these condition's until one day he saw a Detainee (nick-name) smoky, who use to live in the Chicago area, and had also been beaten up on the same unit as Campbell by several of the same Detainee's, smoky asked the Sergent if Campbell could be moved to a different unit with him, Campbell was then housed on a unit with smoky around a group of new Detainee's.

## ARGUMENT

18. Detainee claims for failure to protect are actionable, when jailers knew of a serious risk of harm yet fails to act on it. See: Farmer v. Brennan, 114 S.Ct. 1970 at 1978-84 (1994)

19. Jailers may also be found liable if they fail to isolate obvious victim's or if they place a prisoner in a situation of danger from others who are known to be aggressive and violent. See: Parker v. Carpenter, 978 F.2d 199, 192 (5th Cir. 1992) Redman v. City of San Diego, 942 F.2d 1435, 1444 (9th Cir. 1991) cert denied, 112 S.Ct. 972 (1992). or putting prisoner's in conditions that are dangerous to all prisoners or an identifiable group of prisoners. See: Farmer 114 S.Ct. 1970, 1982 (1994). Denial of medical treatment is actionable Estelle v. Gamble 97 S.Ct. 285 (1976).

## Claims for Relief

20. That because Campbell suffered both serious physical and mental pain and suffering, fear paranoia of the unknown and cruel and unusual punishment treatment and defendant's combined deliberate indifference contributed to and was the proximate cause of the above described violation of Campbell's 8th Amendment Rights and assault and battery and constitutes the tort of failure to protect under the law of the state of Illinois and the United States.

4.) The plaintiff Campbell of Compensatory Damages be awarded to him in the amount of $100.000 jointly and severally against the Sheriff, and unknown named defendant's one, two three, four and five for the physical and emotional injuries

sustained as a result of the plaintiff's beating.

(2) The plaintiff Campbell Request's $50,000 Jointly And Severally Against The Sheriff And Nurse defendant fine for the physical And Emotional Injury resulting from their failure to provide Adequate Medical Care to Campbell.

(3) Plaintiff Campbell Request's <u>Punitive Damages</u> of $25,000 Each Against the Sheriff And unknown Named defendants one, two, three, four And Five, To deter them from Ever Engageing in the above mentioned Behavior Again.

4. Grant such other Relief As it may Appear that plaintiff is Entitled. Because Virtually Every state has Expressly or by implication opened its courts to ℥1983 Actions And there Are No State Court systems that Refuse to hear ℥1983 Actions. <u>Howlett v. Rose</u>, 496 U.S. 356, 378, 110 S.Ct. 2430 (1990) <u>Yellow freight system inc v. Donnelly</u>, 494 U.S. 820, 823-26 110 S.Ct. 1566 (1990)

#20030030630
<u>Don Campbell</u>, P.O. Box 089002 Chicago, IL 60608
I Declare under penalty of Perjury that the foregoing is true And Correct: pursuant to 28 USC ℥1746

Dated: November 12, 2004